William **WATTLETON et al., Plaintiffs,**

**and**

Steve T. Tillman et al.,
**Plaintiffs-Intervenors,**

v.

**LADISH CO. et al., Defendants.**

**Civ. A. No. 75–C–746.**

United States District Court,
E. D. Wisconsin.

Feb. 13, 1981.

---

Percy L. Julian, Jr., Lawrence Classen, Madison, Wis., Merrick R. Domnitz, Milwaukee, Wis., Jonathan Wallas and Julius Chambers, Charlotte, N. C., for plaintiffs.

David E. Jarvis and Fred Groiss, Milwaukee, Wis., for defendant Ladish Co.

Stephen J. Hajduch, Milwaukee, Wis., for defendant International Brotherhood of Technical & Professional Engineers.

Robert E. Gratz, Milwaukee, Wis., for defendant Local 1862 IAMAW.

Richard Lyman, Toledo, Ohio, and Hamilton Hoyt, Milwaukee, Wis., for defendants International Brotherhood of Firemen & Oilers.

George F. Graf and Miriam Horwitz, Milwaukee, Wis., for defendant Associated Unions, Local # 500.

Alan Levy and Albert J. Goldberg, Milwaukee, Wis., for defendant International Brotherhood of Electrical Workers.

Lloyd F. Engle, Pittsburgh, Pa., and Albert J. Goldberg, Milwaukee, Wis., for defendant International Die Sinker Conf.

REYNOLDS, Chief Judge.

## I. Introduction

This is a civil action brought pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 1981, and 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief because of defendants' alleged racially discriminatory practices. The court has jurisdiction under 28 U.S.C. § 1343(4), 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. §§ 2201 and 2202.

Plaintiffs William Wattleton, Johnnie Robinson, Clayton Jacobs, John E. Armstrong, Abraham Leflore, Wardell Wilson, Clarence Suggs, Daniel O. Brown, Ruben Madison, Robert Spearmon, and Fred J. Colin, and plaintiffs-intervenors Steve T. Tillman, William Bell, Charles Jones, Charles C. Graves, Tommie L. Ballet, Henry E. Graves, and Willie Queary are all black citizens of the State of Wisconsin and the United States and reside in the Eastern District of Wisconsin. (The plaintiffs and plaintiffs-intervenors are hereinafter referred to as "plaintiffs"). All plaintiffs are present or former employees of the defendant Ladish Co. ("Ladish") and are present or former members of defendant union, the International Association of Machinists and Aerospace Workers, Local # 1862 ("Local 1862"). Other defendants to this action are the International Federation of Professional and Technical Engineers, Local # 92 ("Local 92"); the International Brotherhood of Firemen and Oilers, Local # 125 ("Local 125"); the International Brotherhood of Electrical Workers, Local # 494 ("Local 494"); the Associated Unions of America, Local # 500 ("Local 500"); the International Die Sinkers Conference and Milwaukee Die Sinkers, Lodge # 140 ("Lodge 140"); and the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local # 1509 ("Local 1509").

On February 12, 1980, this Court issued an order and decision certifying this action as a class action on the limited issue of whether the challenged seniority system is "bona fide" within the meaning of Title VII. Those plaintiffs identified as members of the above-defined class were notified in an order filed May 9, 1980, that as members of the class they had the following options:

"1. If you do nothing, you will remain a member of the class and will be represented by Attorneys Percy L. Julian, Jr., and the law firm of Julian, Olson & Crandall, S.C., 330 East Wilson Street, Madison, Wisconsin 53701 (Phone: 608–255–6400) and Jonathan Wallas and the law firm of Chambers, Stein, Ferguson & Becton, P.A., 951 S. Independence Boulevard, Charlotte, North Carolina 28202 (Phone: 704–375–8461), who have filed this action on behalf of the plaintiffs and the class;

"2. If you desire to remain in this case but wish to hire your own attorney, you may do so and have your attorney advise the Clerk of Court in writing that he represents you in this proceeding; or

"3. If you desire to exclude yourself from the class, you may do so by sending a written response to the Clerk of Court whose address is Ms. Ruth LaFave, Clerk of Court, United States Courthouse, Milwaukee, Wisconsin 53202. The response should state 'I wish to be excluded from the class in the case of *Wattleton, et al. v. Ladish Co., et al.*, Civil Action No. 75–C–746' and you should sign your name to it. Said notice must be mailed or delivered to the Clerk by June 15, 1980."

In a status conference held on November 3, 1980, the plaintiffs and certain defendants informed the Court that they were prepared to settle all issues remaining in this case, and the Court determined that a hearing should be held thereon on Monday, December 22, 1980, at 9:30 a. m.

In furtherance thereof, on November 7, 1980, this Court issued a notice of hearing to consider and approve the proposed consent decree and an order implementing the hearing to consider the proposed consent decree and providing for notice of the hearing. The notice and consent decree (attached hereto as Appendix "A") were mailed to the class members shown on Exhibits "A" and "B" to the consent decree on November 19, 1980, and a copy of the consent decree was made available to the public in the Clerk of Court's office.

On December 22, 1980, the Court conducted a hearing to approve or take objections to the proposed consent decree. The plaintiffs and certain defendants submitted the proposed consent decree for settlement of all issues remaining in the case and moved for approval of the settlement agreement. For the following reasons, the motion is granted and the settlement agreement between the plaintiffs and certain defendants is approved.

## II. *Settlement of a Class Action*

Rule 23(e) of the Federal Rules of Civil Procedure provides:

"(e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

� The Seventh Circuit has recognized that the essence of a settlement in compromise and that one of the benefits obtained from it is avoidance of the need for court resolution of disputed issues. *In re General Motors Corporation Engine Interchange Litigation*, 594 F.2d 1106 at 1132, n. 44 (7th Cir. 1979); *Patterson v. Stovall*, 528 F.2d 108, 112, 114 (7th Cir. 1976); *McDonald v. Chicago Milwaukee Corporation*, 565 F.2d 416 (7th Cir. 1977). Nevertheless, before it can approve a settlement proposal, the Court must be satisfied that the settlement is fair, reasonable, and adequate. *In Re General Motors, supra*, at 1122; *In Re Clark Oil & Refining Corporation Antitrust Litigation*, 422 F.Supp. 503 (E.D.Wis.1977). The proponents of the settlement bear the burden of persuasion on the issue of fairness. *In Re General Motors*, at 1126, n.30; Manual for Complex Litigation § 1.46 at 56 (1977 ed.) (Wright & Miller) (hereafter "Manual").

Among the factors which the Court should consider in judging the fairness of the proposal are the following:

"(1) '* * * the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement';

"(2) '[T]he defendant's ability to pay';

"(3) '[T]he complexity, length and expense of further litigation';

"(4) '[T]he amount of opposition to the settlement';"

Manual, supra, at 56.

Professor Moore notes in addition the factors of:

"(1) * * *

"(2) Presence of collusion in reaching a settlement;

"(3) The reaction of members of the class to the settlement;

"(4) The opinion of competent counsel;

"(5) The stage of the proceedings and the amount of discovery completed."

3B Moore's Federal Practice § 23.80[4] at 23–521 (2d ed. 1978).

�in The most important of the factors is number "(1)" from the Manual listed above; that is, the strength of the plaintiffs' case on the merits as compared to what is offered in settlement. Manual at 56; 3B Moore's at 23–521; *In Re General Motors*, at 1132, n. 44.

▣ The decision to accept or reject the settlement proposal is one within the discretion of the district court. *In Re Clark Oil, supra*, at 507; Manual at 57; *Ace Heating & Plumbing Company v. Crane Company*, 453 F.2d 30 (3d Cir. 1971). If the Court finds that the settlement is fair, it may accept it over the objection of some class members, *In re General Motors, supra*, at 1134, and also over the objection of named class representatives. *In re General Motors*, at 1128, n. 34 and 1134; *McDonald, supra*, at 426. The Court cannot, however, modify the terms of a settlement proposal; it can only accept or reject the proposal as presented to it. *In re General Motors, supra*, at 1125, n. 24.

In the Manual it is recommended that the court follow a two-step procedure, which the Seventh Circuit has endorsed, *In re General Motors, supra*, at 1133, in regard to a settlement proposal:

" * * * The first step involves a preliminary determination as to whether notice of the proposed settlement should be given to members of the class and a hearing scheduled at which evidence in support of and in opposition to the proposed settlement will be received. Unless the judge is preliminarily satisfied that the proposed settlement is within the range of possible approval, there is no point in proceeding with notice and a hearing.

\* \* \* \* \* \*

"Such a preliminary hearing is not, of course, a definative [sic] proceeding on the fairness of the proposed settlement * * * * * * [I]t is simply a determination that there is, in effect, 'probable cause' to submit the proposal to members of the class and to hold a full scale hearing on its fairness at which all interested parties will have an opportunity to be heard after which a formal finding of fairness will be made." Manual at 53–55.

Assuming that a finding of probable cause is made and notice is given to members of the class:

"At the hearing itself, every effort should be made not only to hear all interested parties desiring to be heard, but to adduce all information necessary to enable the judge intelligently to rule on whether the proposed settlement is 'fair, reasonable, and adequate.' * * * " Manual at 57.

In this case, the Court on December 22, 1980, held a pre-fairness hearing at which counsel for the parties stated to the Court their reasons for supporting the settlement.

During the hearing the Court heard statements from counsel and heard testimony from seven persons opposed in various degrees to the settlement and who appeared in response to the notice of the agreement previously published and sent out to members of the plaintiff class.

At the conclusion of the hearing on December 22, 1980, the Court took the settlement proposal under advisement. For the reasons set forth in Part III below, the Court approves the agreement as being fair, adequate, reasonable, and in the best interests of the plaintiff class members.

### III. *The Settlement Agreement*

■ In reaching its decision to approve the settlement agreement, the Court has considered the strength of the plaintiffs' case on the merits as compared to what is offered in settlement, the complexity, length and expense of further litigation, the present stage of the proceedings and the amount of discovery completed, the amount of opposition to the settlement agreement and the reaction of members of the class to it, the possibility of the presence of collusion between opposing counsel, and the opinion of counsel on the agreement. The Court has also considered the reasonableness of the attorneys' fees which will be paid to plaintiffs' counsel under the agreement. The factor of defendants' ability to pay is not relevant to this case.

■ The complexity, length, and expense of future litigation is a factor which weighs in favor of approval of the settlement. This case has been in progress for five years, and during this time the cases of *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), and *E.E.O.C. v. United Air Lines*, 560 F.2d 224 (7th Cir. 1977), have been decided. Although counsel are fully aware of the issues raised by the case and the proof available, the issue of whether a challenged seniority system is "bona fide" within the meaning of Title VII is still complex, and it arises in an area of the law which is still in the process of development. In the event the settlement proposal was not approved, this case could take years to try at great expense, since each individual plaintiff would have to prove his or her case of employment discrimination on the basis of race. On the other side of the ledger, in the event the settlement proposal is approved, several settling defendants will be dismissed from this action, thereby reducing the length, complexity, and expense of the legal action against the nonsettling defendants.

Thus, length, complexity and expense of future litigation are factors favoring approval of the consent decree.

The stage that the proceedings have reached is also a relevant factor inasmuch as it enables the Court and counsel to compare fully the resolution of the case with the strength of the plaintiff's case on its merits. As stated above, this is the most significant of the factors which a court should consider. *In re General Motors, supra,* at 1132, n. 44.

In evaluating the strength of the plaintiffs' case on its merits, the Court places much weight on the statements of both plaintiffs' counsel, Jonathan Wallas, and defendant Ladish's counsel, David Jarvis, that the plaintiffs faced several contingencies including:

1. The recent Supreme Court decision in *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In *Teamsters,* the Supreme Court concluded that a seniority system whose operation served to freeze the status quo of prior discriminatory employment practices would be legally valid under § 703(h) of Title VII if it were a bona fide seniority system within the meaning of that section. Id. at 353–54, 97 S.Ct. at 1863–1864. When this action was filed, the *bona fide* seniority system defense was not a defense that was available to the defendants. Both plaintiffs' and defendants' counsel agree that the *Teamsters* decision has changed their perspective of this case and has increased the plaintiffs' burden.

2. The scope of the Wisconsin Fair Employment Act. The issue of whether the Wisconsin Fair Employment Act, § 111.31 et seq., Wis.Stats., which is designed to end discrimination and the effects of discrimination based on race in Wisconsin, applies to seniority systems which allegedly perpetuate racial discrimination and perhaps affords the defendants no defense that the seniority system is bona fide is a significant unknown under Wisconsin law.

3. Proving each individual plaintiff's case. The defendants argue that none of the plaintiffs has any Title VII claim be-cause of the 300-day timeliness limitation. While a § 1981 claim has a longer statute of limitations, the plaintiffs' burden of proof is higher because discriminatory motive or intent must be shown. *Mescall v. Burrus,* 603 F.2d 1266 (7th Cir. 1979).

To find that the solution that is offered in the settlement agreement is fair, reasonable, and adequate, the Court must evaluate such solution. The proposed consent decree provides in part as follows:

"IV. *SENIORITY RELIEF*

"Consistent with their goals of affirmative action, the settling parties agree to the following seniority relief. Within fifteen (15) days of the date of the filing of this Decree, Ladish shall mail or hand deliver to each class member then employed by Ladish at its Cudahy facilities a copy of the Transfer Designation Form, a copy of which is attached hereto as Exhibit C. Class members shall be required to return a signed Transfer Designation Form within forty-five (45) days of receipt of said form.

"Class members who indicate they do not desire to transfer or who do not return their forms in forty-five (45) days shall lose any rights to preferential transfer pursuant to this Decree.

"Class members who currently are members of a bargaining unit who do indicate a desire to transfer to a given job or department shall be given the following opportunities:

"(a) Upon receipt of all Transfer Designation Forms the Company shall make a separate list of class members desiring to transfer into jobs within the jurisdiction of each of the labor unions representing employees at Ladish. That is, a list of all class members desiring to transfer to jobs within Local 494 shall be made, a list of all class members desiring to transfer to jobs within Local 125 shall be made; and so forth. These lists of class members shall have class members ranked in order of continuous Company hire date seniority and shall be given to the defendant unions and counsel for the plaintiffs, and shall be generally

accessible to class members in the Company's personnel office.

"(b) As vacancies in entry level jobs occur which the Company has determined to fill from outside the bargaining unit (and the Company agrees to so fill all such vacancies unless bona fide business reasons dictate otherwise), qualified class members shall be allowed to transfer according to the lists prepared in Paragraph IV(a) to the jobs or departments they have requested in order of their Company hire date seniority. Such transfers shall be in preference to all other transfer requests or to new hires.

"(c) Upon transfer to a new job or department pursuant to the terms of this Decree, class members will have ninety (90) days from the effective date of transfer in which to transfer back to their former job, department and/or classification with full accrued departmental and/or classification seniority by filling out and signing a written retransfer request. Once a class member transfers back to his former job, he loses all rights under Paragraph IV of this Decree.

"(d) Upon transfer to a job under this paragraph, class members who are now members of a bargaining unit shall maintain bargaining unit, departmental and/or classification seniority computed as of their most recent continuous date of hire with the Company. Such seniority shall be thereafter utilized in the new department according to the pertinent collective bargaining agreement.

"(e) Transferring class members will be red-circled in the jobs to which they transfer and will receive the average straight time hourly earnings from the immediately preceding quarter in the jobs from which they transferred with future increases until they obtain a job of higher rate or voluntarily refuse to bid on or request transfer to a higher paying job for which their seniority and qualifications would qualify them.

"An opportunity will be given all class members to meet with counsel for the plaintiffs on Company premises after the entry of this Decree and before the Transfer Designation Forms are due in order that said counsel can answer any questions which class members may have about this paragraph.

"V. HIRING, ASSIGNMENT AND PROMOTION GOALS

"Defendant Ladish agrees to recruit and hire qualified employees without regard to race or color. Consistent with its collective bargaining agreements, Ladish further agrees to recruit, hire and assign qualified blacks for vacancies (including apprentice positions) throughout all of the Company's departments and in all bargaining units. The settling union defendants agree to cooperate with Ladish to ensure blacks are fairly hired and assigned and are given equal opportunities with respect to all apprentice programs.

"Ladish is determined to demonstrate its commitment to equal employment opportunity by achieving and maintaining a work force the racial composition of which reasonably reflects the qualified employees and applicants available for such work in the Company's recruiting areas. In order to achieve this work force composition, Ladish is committed, through its promotion, training and development policies, to ensure that advancement is based upon individual merit and qualification, regardless of race or color.

"In order to ensure that its work force accurately reflects the race distribution of the labor force and to support the attainment of affirmative action goals, Ladish has adopted, pursuant to Executive Order 11246, hiring and promotion goals designed to obtain a work force which reflects the availability of minorities. Such goals, as may from time to time be modified, are hereby incorporated in this Decree and will be revised at least annually. A copy of the current goals are attached as Exhibit D. Copies of such goals and the corresponding progress reports will be provided to counsel for plaintiffs on an annual basis. In addition to the goals established under Executive Order 11246, and incorporated herein, the Company agrees to establish the following specific hiring and promotion goals:

"(a) Of the next twenty (20) vacancies in its entry level manufacturing supervisory jobs (including trainees), not less than four (4) bona fide offers of employment will be made to minorities;

"(b) Not less than two (2) of the next twenty (20) offers of employment for entry level professional jobs will be made to minorities. Entry level professional jobs include accounting, data processing, engineers, and sales.

"(c) Of the next ten (10) job offers for electrical apprentices, not less than two (2) will be made to minorities.

"These offers of employment shall be bona fide and shall be on terms and conditions comparable to those contained in offers made to non-minorities.

"The above goals will be subject to revision for applicable periods beginning January 1, 1982, through December 31, 1985, in light of the Company's experience. Goals are not to be considered as rigid or inflexible quotas. Ladish will pursue these goals with good faith effort.

"In order to ascertain the interests of incumbent class members with respect to vacancies in supervisory, professional and management jobs, Ladish shall, within ninety (90) days of the date of this Decree, canvass all class members then actively employed by the Company and provide each class member with an opportunity to indicate in writing the supervisory, managerial, or professional positions each class member desires to obtain. The Company will, when vacancies arise, consider the results of the canvass and attempt to place qualified class members in the jobs in which they indicate interest. Class members shall be informed at the time of the canvass that if their desires subsequently change, they may so inform the personnel office in writing."

The Court is persuaded, in view of the affirmative action embodied in §§ IV and V of the consent decree, that the settlement does address itself to the goal of remedying the settling defendants' allegedly past discriminatory employment practices.

The settlement agreement also provides that the EEO coordinator for Ladish's Cudahy facility shall be the officer responsible for implementation of this consent decree. In carrying out this function, the EEO coordinator will work in cooperation and be in regular consultation with a class committee to be designated by plaintiffs (initially, Wm. Wattleton, J. Robinson and Wilbert Evans) and with counsel for the parties in order that there may be agreement between the parties to this action as to the application and implementation of this decree; and further provides that on or before March 1, 1982, for the twelve-month period ending December 31, 1981, and thereafter for four years, Ladish shall file annual progress reports with plaintiffs' counsel. The Court is satisfied that actions which may not comport with the settlement agreement will be brought to the attention of the class committee, and that the committee will satisfactorily protect the interests of the plaintiffs under the settlement agreement.

The consent decree also provides for the payment by Ladish of $200,000 to be distributed as follows:

"Those class members whose names are set forth in Exhibit "A," all of whom have spent time, incurred personal expense, and risked a portion of plaintiffs' legal fees in order that this case could be brought, will each receive the sum of $1,130.00.

"The remaining class members whose names are set forth in Exhibit "B" will each receive the sum of $565.00."

The Court finds that the differing treatment of class members is justified because of the differing risks and roles taken by class members in relation to this action, and finds that the payment of such a significant sum of money to be reasonable.

The consent decree also provides that counsel for plaintiffs shall receive from Ladish their attorneys' fees, costs, and expenses in an amount agreed upon by the plaintiffs and Ladish and approved by the Court, or if no approval is granted, an amount set by the Court. Such payment will result in the receipt by class members

who incurred the cost of this action of over $40,000. This will not preclude plaintiffs from recovering additional fees, costs, and expenses from the nonsettling defendants.

Having compared the strength of the plaintiffs' case on the merits with the solution that is offered in the consent decree, the Court finds that the consent decree is fair, reasonable, and adequate to protect the plaintiffs' right to a remedy for the settling defendants' past allegedly discriminatory employment practices.

In addition to reviewing the merits of the plaintiffs' case as compared to what is offered in settlement, the Court in deciding whether or not to accept the settlement should examine the reaction of class members to the settlement and the opinion of competent counsel with regard to the settlement, and should consider the possibility of collusion between counsel in arriving at the terms of the settlement.

First, the Court is persuaded that there was no collusion among counsel. The history of the litigation is a good indication in itself of lack of collusion.

Based on its long exposure to this case, the Court is well aware of counsels' competence, of the time and labor spent by them, of the magnitude and complexity of this litigation, of the responsibility undertaken by them, of the work performed by them out of court in preparation for court proceedings, and of what they have achieved during this litigation.

Both of plaintiffs' counsel, Attorneys Wallas and Julian, and several of the defendants' counsel, have expressed themselves in favor of the settlement agreement. It is their opinion that the future course of conduct by the defendant Ladish will be much improved, and that the affirmative action plan will be complied with in good faith. The Court has a high opinion of all counsel who have participated in this litigation. Their judgment as to the merits of the settlement agreement therefore weighs heavily with the Court, particularly since the Court is convinced that agreement was not reached easily but rather was the result of long and difficult negotiations.

Finally, the Court must consider the reaction of members of the plaintiff class to the settlement agreement. Nine persons responded in writing in regard to the merits of the proposed consent decree. Of these responses, five were opposed to acceptance of the agreement. At the fairness hearing, seven persons told the Court their objections to the consent decree. For the most part, those persons opposed acceptance of the consent decree on the ground that the monetary portion of the decree was inadequate.

The opinions expressed were thoughtful and informative. They represent the opinion of only a small percentage of the 228 class members. As stated, the Court can only accept or reject the settlement agreement; it cannot modify the agreement and still require the parties to accept it. *In Re General Motors Corporation Engine Interchange Litigation*, 594 F.2d 1106 at 1125, n.24 (7th Cir. 1979). Also, the Court's duty in reviewing a settlement agreement is not to conduct a trial on the merits but rather to consider whether or not the agreement is fair, adequate, and reasonable, even though the plaintiffs might have obtained more relief had they chosen to continue litigating rather than to settle. *In Re General Motors, supra*, at 1132, n.44; *Patterson v. Stovall*, 528 F.2d 108, 112 (7th Cir. 1976); *McDonald v. Chicago Milwaukee Corporation*, 565 F.2d 416 (7th Cir. 1977).

After reviewing the proposed settlement agreement in light of all of the factors which should be considered, see Manual for Complex Litigation § 1.46 at 56 (1977 ed.) (Wright & Miller); 3B Moore's Federal Practice § 23.80[4] at 23–521 (2d ed. 1978), including the criticisms of certain class members, the Court is persuaded that the agreement is fair, reasonable, and adequate, and that it merits approval by the Court.

The foregoing shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

IV. *Order*

For the foregoing reasons,

IT IS ORDERED that the motion of the plaintiffs and defendants for approval of the consent decree filed with the Court on December 22, 1980, is granted and the consent decree is approved.

IT IS FURTHER ORDERED that the defendants Ladish, Local 125, Local 494, and Local 500 are dismissed from this action.

IT IS FURTHER ORDERED that a court trial between the plaintiffs and Local 92, Lodge # 140, Local 1509, and Local 1862 will commence on March 30, 1981, at 9:30 a. m.

## APPENDIX "A"

### CONSENT DECREE

This action was instituted December 30, 1975. Plaintiffs and intervening-plaintiffs (hereinafter collectively referred to as plaintiffs) are present and former black employees of the defendant Ladish Co. (hereinafter referred to as "Ladish" or the "Company"). The defendants, in addition to Ladish, are the following labor organizations (hereinafter sometimes referred to as the "union defendants") which represent Ladish's employees: The International Federation of Professional and Technical Engineers, Local # 92; The International Brotherhood of Firemen and Oilers, Local # 125; The International Brotherhood of Electrical Workers, Local # 494; Office and Professional Employees International Union, Local # 85, (formerly Associated Unions of America, Local # 500); The International Die Sinkers Conference and Milwaukee Die Sinkers, Lodge # 140; The International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local # 1509; and The International Association of Machinists and Aerospace Workers, Local # 1862.

The plaintiffs alleged in their complaint and in subsequent pleadings that the defendants followed and were still following discriminatory employment practices based on race at Ladish's facilities located in Cudahy, Wisconsin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (hereinafter referred to as "Title VII") and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (hereinafter referred to as "§ 1981"). Plaintiffs also alleged that Local # 1862 had violated the duty of fairly representing its black members imposed by 29 U.S.C. §§ 151 et seq. Plaintiffs have alleged from the outset that this case is properly a class action.

The defendants have denied the material allegations of the complaint and expressly deny any violation of Title VII, § 1981, 29 U.S.C. §§ 151 et seq. or any other equal employment law, regulation or order, and do not, by consenting to the entry of this Decree, admit any liability whatsoever. However, to avoid the expense, inconvenience and distraction of prolonged litigation, to demonstrate good faith and to put to rest all controversies and all claims whether arising under State or Federal law, which have been or might be asserted by any member of the class arising from the matters alleged in the pleadings, the plaintiffs, Ladish, Local # 92, Local # 125, Local # 494, Local # 85, and Local # 1862 (hereinafter the "settling parties") have concluded that it is in the best interest of the settling parties to settle this action in the manner and on the terms set forth in this Decree.

This Decree does not settle any pending claims between plaintiffs and the union defendants Lodge # 140, Local # 1509, and Local # 1862. Plaintiffs are free to continue with their claims against Lodge # 140, Local # 1509, and Local # 1862, and said defendants are not parties to this Decree.

This Decree is being issued with the consent of the settling parties and does not constitute a finding or adjudication of any discriminatory act or practice on the part of the settling defendants.

Therefore, the Court, upon due consideration of the record herein and being fully advised in the premises, concludes that the Court has jurisdiction of the parties and of the subject matter of this action and further ORDERS, ADJUDGES AND DECREES that:

## I. CLASS REPRESENTATION

On February 12, 1980, this Court certified a class in this proceeding and defined the class as follows:

> ... for the purpose of determining ... whether the seniority system maintained by the defendants in the above-entitled action is a "bona fide seniority system" within the meaning of § 703(h) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(h), this action is hereby certified as a class action on behalf of all blacks hired by the Ladish Company prior to January 22, 1968, who (1) were hired by the Ladish Company for jobs that were within the jurisdiction of the International Association of Machinists and Aerospace Workers, Local 1862, and (2) were employed by the Ladish Company as of December 30, 1969.

The settling parties have reached agreement with respect to issues going beyond the "bona fide" nature of the seniority system. Therefore, the class of affected employees who are represented by the plaintiffs in this proceeding consists, for the purposes of this Consent Decree, of all blacks who both:

(a) were hired by Ladish Co. at Ladish's Cudahy, Wisconsin facilities prior to January 22, 1968 for jobs within the jurisdiction of the International Association of Machinists and Aerospace Workers, Local 1862; and

(b) were employed by Ladish in bargaining unit jobs as of December 30, 1969.

A list of all class members who fall within the definition set forth above is set forth in Exhibits A and B attached hereto and incorporated herein.

This action shall be maintained as a class action under Fed.R.Civ.P. 23(b)(2). The definition of the class given above is one agreed upon by the settling parties solely for the purposes of this Decree.

## II. SETTLEMENT SCOPE

This Consent Decree settles in full all issues raised against the settling defendants or encompassed by the facts pleaded in this action as to the settling defendants whether the issues be viewed under State or Federal law. The settling defendants' undertakings and commitments in this Decree constitute settlement in full of all claims against said settling defendants made by plaintiffs or class members of unlawful discrimination in recruitment, hiring, seniority, training, assignment, transfer, promotion, job classification, evaluation, discipline, termination, pay, benefits and other terms and conditions of employment, known or unknown, and for damages, back pay, benefits, injunctive, declaratory or other relief for unlawful discrimination, past or present, up to and including the date on which notice of this proposed settlement is last published or mailed to the class (hereinafter "notice date").

## III. NONDISCRIMINATION

The settling defendants, their officers, agents and employees shall continue to take positive action to ensure conformance with the requirements and objectives set forth in Title VII of the Civil Rights Act of 1964 and the Wisconsin Fair Employment Act, as amended. This obligation includes and requires special emphasis on the following:

> Hiring, placement, upgrading, transfer or demotion; recruitment, advertising or solicitation for employment; rates of pay or other forms of compensation; selection for training; and termination.

Ladish shall hire and promote individuals qualified and trainable for positions by virtue of education, training, experience and personal qualifications without regard to race or color.

## IV. SENIORITY RELIEF

Consistent with their goals of affirmative action, the settling parties agree to the following seniority relief. Within fifteen (15) days of the date of the filing of this Decree, Ladish shall mail or hand deliver to each class member then employed by Ladish at its Cudahy facilities a copy of the Transfer Designation Form, a copy of which is attached hereto as Exhibit C. Class members shall be required to return a signed

Transfer Designation Form within forty-five (45) days of receipt of said form.

Class members who indicate they do not desire to transfer or who do not return their forms in forty-five (45) days shall lose any rights to preferential transfer pursuant to this Decree.

Class members who currently are members of a bargaining unit who do indicate a desire to transfer to a given job or department shall be given the following opportunities:

(a) Upon receipt of all Transfer Designation Forms the Company shall make a separate list of class members desiring to transfer into jobs within the jurisdiction of each of the labor unions representing employees at Ladish. That is, a list of all class members desiring to transfer to jobs within Local 494 shall be made, a list of all class members desiring to transfer to jobs within Local 125 shall be made; and so forth. These lists of class members shall have class members ranked in order of continuous Company hire date seniority and shall be given to the defendant unions and counsel for the plaintiffs, and shall be generally accessible to class members in the Company's personnel office.

(b) As vacancies in entry level jobs occur which the Company has determined to fill from outside the bargaining unit (and the Company agrees to so fill all such vacancies unless bona fide business reasons dictate otherwise), qualified class members shall be allowed to transfer according to the lists prepared in Paragraph IV(a) to the jobs or departments they have requested in order of their Company hire date seniority. Such transfers shall be in preference to all other transfer requests or to new hires.

(c) Upon transfer to a new job or department pursuant to the terms of this Decree, class members will have ninety (90) days from the effective date of transfer in which to transfer back to their former job, department and/or classification with full accrued departmental and/or classification seniority by filling out and signing a written retransfer request. Once a class member transfers back to his former job, he loses all rights under Paragraph IV of this Decree.

(d) Upon transfer to a job under this paragraph, class members who are now members of a bargaining unit shall maintain bargaining unit, departmental and/or classification seniority computed as of their most recent continuous date of hire with the Company. Such seniority shall be thereafter utilized in the new department according to the pertinent collective bargaining agreement.

(e) Transferring class members will be red-circled in the jobs to which they transfer and will receive the average straight time hourly earnings from the immediately preceding quarter in the jobs from which they transferred with future increases until they obtain a job of higher rate or voluntarily refuse to bid on or request transfer to a higher paying job for which their seniority and qualifications would qualify them.

An opportunity will be given all class members to meet with counsel for the plaintiffs on Company premises after the entry of this Decree and before the Transfer Designation Forms are due in order that said counsel can answer any questions which class members may have about this Paragraph.

## V. HIRING, ASSIGNMENT AND PROMOTION GOALS

Defendant Ladish agrees to recruit and hire qualified employees without regard to race or color. Consistent with its collective bargaining agreements, Ladish further agrees to recruit, hire and assign qualified blacks for vacancies (including apprentice positions) throughout all of the Company's departments and in all bargaining units. The settling union defendants agree to cooperate with Ladish to ensure blacks are

fairly hired and assigned and are given equal opportunities with respect to all apprentice programs.

Ladish is determined to demonstrate its commitment to equal employment opportunity by achieving and maintaining a work force the racial composition of which reasonably reflects the qualified employees and applicants available for such work in the Company's recruiting areas. In order to achieve this work force composition, Ladish is committed, through its promotion, training and development policies, to ensure that advancement is based upon individual merit and qualification, regardless of race or color.

In order to ensure that its work force accurately reflects the race distribution of the labor force and to support the attainment of affirmative action goals, Ladish has adopted, pursuant to Executive Order 11246, hiring and promotion goals designed to obtain a work force which reflects the availability of minorities. Such goals, as may from time to time be modified, are hereby incorporated in this Decree and will be revised at least annually. A copy of the current goals are attached as Exhibit D. Copies of such goals and the corresponding progress reports will be provided to counsel for plaintiffs on an annual basis. In addition to the goals established under Executive Order 11246, and incorporated herein, the Company agrees to establish the following specific hiring and promotion goals:

(a) Of the next twenty (20) vacancies in its entry level manufacturing supervisory jobs (including trainees), not less than four (4) bona fide offers of employment will be made to minorities;

(b) Not less than two (2) of the next twenty (20) offers of employment for entry level professional jobs will be made to minorities. Entry level professional jobs include accounting, data processing, engineers, and sales.

(c) Of the next ten (10) job offers for electrical apprentices, not less than two (2) will be made to minorities.

These offers of employment shall be bona fide and shall be on terms and conditions comparable to those contained in offers made to non-minorities.

The above goals will be subject to revision for applicable periods beginning January 1, 1982, through December 31, 1985, in light of the Company's experience. Goals are not to be considered as rigid or inflexible quotas. Ladish will pursue these goals with good faith effort.

In order to ascertain the interests of incumbent class members with respect to vacancies in supervisory, professional and management jobs, Ladish shall, within ninety (90) days of the date of this Decree, canvass all class members then actively employed by the Company and provide each class member with an opportunity to indicate in writing the supervisory, managerial, or professional positions each class member desires to obtain. The Company will, when vacancies arise, consider the results of the canvass and attempt to place qualified class members in the jobs in which they indicate interest. Class members shall be informed at the time of the canvass that if their desires subsequently change, they may so inform the personnel office in writing.

## VI. INCENTIVE PAY

In order to promote the implementation of this Decree and the attainment of the affirmative action employment goals set forth in Paragraph V herein, Ladish shall provide incentive payments to all class members. Ladish hereby agrees to pay a total of $200,000.00 to be distributed to the class on the basis set forth below.

Those class members whose names are set forth in Exhibit A, all of whom have spent time, incurred personal expense and who have risked a portion of plaintiffs' legal fees in order that this case could be brought, shall each receive the sum of $1,130.00___.

The remaining class members whose names are set forth in Exhibit B shall receive the sum of $565.00___.

Within thirty (30) days after the final approval by the Court of this Decree, checks in the amounts specified above will be

mailed by certified mail to all class members (or to the estate of all deceased class members).

The method used for the administration of the incentive pay program is simply a mechanical means agreed upon by the settling parties solely for the purpose of this Decree. Plaintiffs do not waive their rights to seek monetary or other relief from the non-settling defendants.

## VII. NOTICE TO CLASS

Appropriate notice to class members of the proposed settlement has been accomplished as previously ordered by the Court. Class members have, therefore, been given an opportunity to object to the proposed Decree.

## VIII. REPORTS

(a) The EEO Coordinator for the Company's Cudahy facility shall be the officer responsible for implementation of this Decree. The responsibility of the official selected shall include ensuring that rights and procedures provided in this Decree are implemented. In carrying out this function, the official shall work in cooperation and regular consultation with the class committee to be hereafter designated by plaintiffs (initially, Wm. Wattleton, J. Robinson & Wilbert Evans) and with counsel for the parties in order that there may be agreement between the parties to this action as to the application and implementation of this Decree. In addition, the official and counsel for the parties shall seek as far as possible to resolve without resort to the Court any problems which may arise in effectuating this Decree. The official shall supervise the preparation of the reports described in Paragraph VIII(b) below.

(b) On or before March 1, 1982, for the twelve-month period ending December 31, 1981, and thereafter for four years, Ladish shall file annual progress reports with plaintiffs' counsel, which will include the following information:

(1) A list detailing by race new hires in all jobs and the jobs, departments and labor union jurisdiction where applicable, to which new hires are initially assigned;

(2) A list showing all transfer and re-transfers or other job movements pursuant to Paragraph IV of this Decree indicating the name of the class member involved and the type of movement made and a list of all class members who move to all nonbargaining unit jobs.

(3) A summary of recruiting efforts made by the Company which demonstrates its efforts to meet the goals described herein.

## IX. ATTORNEYS' FEES

Counsel for plaintiffs shall receive from Ladish Co. attorneys' fees, costs and expenses in an amount agreed upon by the plaintiffs and Ladish Co. and approved by the Court, or if no approval is granted, an amount set by the Court. Such amount shall not preclude plaintiffs from recovering additional fees, costs and expenses from the nonsettling defendants.

## X. STATUS OF LAWSUIT

The last report under Paragraph VIII of this Decree will be due March 1, 1986. Unless a motion is filed within ninety (90) days of the receipt of said final report requesting that the Court consider additional orders for compliance, this case will be dismissed on August 1, 1986.

## XI. ORDER APPROVING CONSENT DECREE

The Court, having fully examined the provisions of this Decree finds that the entire settlement is reasonable, just and in accordance with the Congressional purpose in enacting Title VII and § 1981 and with the Federal Rules of Civil Procedure. Further, the Court finds that the rights and interests of all employees under both State and Federal law are fully protected by this

Decree. Therefore, the Court approves this settlement and compromise of this class action.

IT IS SO ORDERED, this ___ day of _____, 1981.

_____
United States District Judge

CONSENTED TO:
Plaintiffs:
By _____

Ladish Co.
By: _____

Int'l. Fed. of Prof. &
Tech. Engr., Local 92
By: _____

Int'l. Bhd. of F. & O.,
Local 125
By: _____

Int'l. Bhd. of Elec. Wkrs.,
Local 494
By: _____

Office & Prof. Emp. Int'l.
Union, Local 85
By: _____

## EXHIBIT A

1. Adams, Curlie
2. Allen, William
3. Armstrong, John E.
4. Ballet, Tommie L.
5. Banks, Harmon
6. Bell, Elmore
7. Bell, M. C.
8. Bell, William M.
9. Birts, Excell (NMI)
10. Bolts, Trueart V.
11. Bradley, Gus O.
12. Brown, Daniel O.
13. Brown, Wilford Lee
14. Brown, James
15. Buchanan, Willie E.
16. Burns, Leo
17. Campbell, Willie E.
18. Colin, Fred
19. Copeland, Vernon
20. Cunningham, John D.
21. Davenport, Robert
22. Davis, Clarence (NMI)
23. Davis, Clifton
24. Davis, Leon (NMI)
25. Diggs, Watson Jr.
26. Douglas, Terry S.
27. Ealy, Hillard E.
28. Earl, Robert L.
30. Evans, Wilbert (NMI)
31. Fleming, William (NMI)
32. Ford, Charles (NMI)
33. Free, Johnny (NMI)
34. French, Garlvin (NMI)
35. Gaines, Henry
36. Garnett, Henry T.
37. Gayle, Isreal
39. Graves, Charles C.
40. Graves, Henry E.
41. Green, John D.
42. Green, Walter B.
43. Hale, Franklin D.
44. Handley, Celious W.
45. Hawkins, John
46. Henderson, Willie
47. Hill, Earl K.
48. Hill, John R.
49. Holton, Johnnie W.
50. Priestly, Howard
51. Howard, Terry
52. Hutchins, John H.
53. Jackson, Carl D.
54. Jackson, Henry
55. Jackson, Wallace
56. Jacobs, Clayton
57. Jacobs, Robert J.
58. Johnson, Author J. Jr.
59. Johnson, James A.
60. Jones, Charles
61. Jones, Ruble
62. Jordon, June L.
63. Lawrence, Jeff Jr.
64. Lee, Dan L.
65. Leflore, A. B.
66. Lenior, Jerry
67. Lewis, Willie K.
68. Lock, Jimmie
69. Luckett, Rayford E.
70. Luckett, Willie
71. McClain, Terry
72. McClarty, Daniel
73. McClendon, Charles A.
74. McClendon, Willie
75. McDonald, Walter
76. McDowell, Issac
77. McGill, Albert S.
78. McGrew, Bennie E.
79. Madison, Ruben
80. Nash, Birden Jr.
81. Nash, Swanzie Lee
82. Norwood, Cephus
83. Norwood, William, Jr.
84. Osburn, George
85. Pattillo, Marion
86. Pierce, Andy
87. Powell, Rome
88. Queary, Joe L., Jr.
89. Queary, Willie
90. Rhodes, Avery A.
91. Richards, Tommy
92. Ritcherson, Ellis
93. Robinson, Jessie
94. Robinson, Johnie
95. Royal, Fred
96. Ruffin, Charles
97. Saffold, Earl
98. Scott, Murray L.
99. Shaw, Eddie
100. Shaw, Floyd, Sr.
101. Smith, Benjamin F.
102. Smith, John L.
103. Spearmon, Robert
104. Speights, John
105. Staten, Barbee
106. Staten, Estell
107. Staton, Louis V.
108. Stokes, Charles B., Jr.
109. Suggs, Clarence E.
110. Taylor, Floyd (NMI)
111. Taylor, James
112. Terrell, Freddie
113. Thomas, Levi
114. Thompson, Walter
116. Tolley, John
117. Toney, Robert

118. Truvillion, Johnny H.
119. Tucker, Ausie J.
120. Van Buren, Preston
121. Walter, DeWitt C.
122. Wattleton, Edgar
123. Wattleton, William .L.
124. Weaver, Clarence

125. Whiteside, Robert
126. Wilks, Buster W.
127. Williams, Homer
128. Wilson, Wardell W.
129. Wright, Arthur
130. Wyrick, John L.
131. Robinson, Mainus

## EXHIBIT B

1. Austin, Leamon
2. Baker, George H.
3. Bailey, Dewayn
4. Ballard, Walter J.
5. Bates, Rudolph V.
6. Baylis, James C.
7. Beasley, Raymond
8. Beck, Wilmer L.
9. Beckley, William

11. Birts, Lamarr E.
12. Booker, Roosevelt
13. Bowers, Emmett D.
14. Bowers, Homer H.
15. Bradford, Harvey
16. Brooks, J. A.
17. Browning, Eugene P.
18. Brownlow, James B.
19. Cain, Bennie J.
20. Campbell, Hemphill M.
21. Campbell, Richard
22. Charleston, Charles, Jr.
23. Coleman, James
24. Daniels, Herman E.
25. Earl, Charles E.
26. Fifer, Martin L.
27. Flenorl, Joseph C.
28. Fox, Willie D.
29. Givens, Clifton (nmi)
30. Graham, Earl
31. Graham, Segismund W.
32. Graves, Charles R.
33. Graves, Richard E.
34. Green, Robert L.
35. Griffin, Samuel
36. Hamilton, David Jr.
37. Haskins, James
38. Herndon, Leonard L.
39. Holloway, Leander
40. Hooper, George A.
41. Horton, Eddie
42. Horton, William (nmi)
43. Jackson, Joseph
44. Jermon, Cleophus
45. Jones, Carl J.
46. Jones, James H., Jr.
47. Jones, Robert E.
48. Jordan, Alvin W.
49. Knox, William
50. Leonard, Johnnie B.
51. McDowell, Sim

52. McGehee, Willie M.
53. McHenry, Ceodis
54. Mann, Robert W.
55. Matthews, Otis D.
56. Maxwell, Gerald A.
57. May, Wallace
58. Metts, Willie C.
59. Moore, Eugene E.
60. Moore, Robert C.
61. Mosley, Oscar
62. Nichols, Willie
63. Nicholson, Leo
64. Otis, McNair
65. Potee, Roy C.
66. Pyant, Isaiah W.
67. Radcliff, Odis
68. Ricketts, Edson
69. Robinson, Howard L.
70. Rucker, Wash
71. Ruffin, Lee C.

72. Russell, James A.
73. Scott, Otis
74. Sims, Samuel E.
75. Smallwood, Cleveland
76. Smith, F. L.
77. Stanley, Eugene
78. Stewart, Johnie M.
79. Stinson, Clifford
80. Stovall, R. J.
81. Suggs, Wilson C.
82. Thompson, Beauford
83. Tillman, S. T.
84. Toliver, Daniel C.
85. Trice, Isiah
86. Tubbs, Early D.
87. Tucker, Emanuel J.
88. Turner, Howard
89. Turrentine, Louis C.
90. Tyson, John A.
91. Walker, Elmo
92. Warfield, James
93. Warren, James

94. Waugh, Reginald
95. Wheeler, Walter L.
96. Wilder, Frank, Jr.
97. Williams, Charles
98. Williams, Winston, Jr.
99. Woolfolk, Harold
100. Luckett, Rayfield

## EXHIBIT C

### TRANSFER DESIGNATION FORM

I have received a copy of the Consent Decree filed in *Wattleton, et al. v. Ladish Co., et al.* (No. 75–C–746.) I understand that by the terms of that Consent Decree I have the right to transfer, as vacancies occur, to jobs in the jurisdiction of unions other than Local 1862, International Association of Machinists and Aerospace Workers. I have had an opportunity to speak to the lawyers for Mr. Wattleton and the other plaintiffs about my transfer rights.

CHECK ONE OF THE BOXES BELOW. IF YOU CHECK BOX 2, FILL IN THE BLANKS.

1. ☐ I do NOT wish to exercise my right to transfer.

2. ☐ I do wish to exercise my right to transfer. I desire to transfer to the following job or department

_____

which I understand is within the jurisdiction of the following labor union _____

_____ .

MY NAME IS _____
(Print or type your name)

_____
(Signature)

DATE: _____

## APPENDIX

(MINORITY) (XXXXXX) GOALS FOR ALL UNDERUTILIZED MAJOR JOB GROUPS: 2.12

FACILITY:   LADISH CO. – CUDAHY      DATE:  7/1/80

| Underutilized Major Job Groups | Anticipated Openings | | | | To Be Filled By | | Annual Goals | | | | Ultimate Goals | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Hires | Promotions | | | | | |
| | Attrition | Expansion | Contraction | Total | New Hires | Promotions and/or Transfers | | | Timetable | Net Gain | Percentage Goal | Annual Rate of Placement | Timetable |
| ACCOUNTANTS 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 12–31 80 | 0 | 5.1% | 5.1% | 12/31/81 |
| ADMINISTRA. MANAGEMENT 2 | 4 | 0 | 0 | 4 | 4 | 0 | 0 | 0 | " | 0 | 2.1 | 2.1 | 12/31/81 |
| BLKS–GEN. SH. ENTRY LEVEL 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 29.0 | 29.0 | 12/31/82 |
| BLKS–GEN. SH. INTER LEVEL 4 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 13.2 | 13.2 | 12/31/81 |
| BLKS–LEARN./ TRAINEES 5 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 13.2 | 13.2 | 12/31/81 |
| BLKS–SKILLED OPERATIVES 6 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 10.0 | 10.0 | 12/31/81 |
| CLERICAL– INTER. LEV. 8 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 10.0 | 10.0 | 12/31/81 |
| CLERICAL– SENIOR LEV. 9 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 10.0 | 10.0 | 12/31/81 |
| ENGINEERS 10 | 5 | 0 | 0 | 5 | 5 | 0 | 1 | 0 | " | 1 | 3.5 | 3.5 | 12/31/85 |
| TECHNICAL– MANAGEMENT 11 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 1.2 | 1.2 | 12/31/83 |
| IBFO– POWER HOUSE 14 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 6.3 | 6.3 | 12/31/81 |
| IDSC– APPRENTICES 15 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 8.4 | 8.4 | 12/31/83 |
| IDSC– CRAFTS 17 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 2.0 | 2.0 | 12/31/84 |
| IDSC–SKILL. OPERATIVES 18 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 11.3 | 11.3 | 12/31/83 |
| IAMAW– APPRENTICES 19 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 20.7 | 20.7 | 12/31/81 |
| IAMAW– CRAFTS 22 | 5 | 0 | 0 | 5 | 5 | 0 | 1 | 0 | " | 1 | 5.7 | 5.7 | 12/31/81 |
| IAMAW–MACH. SKILL. OPR. 24 | 8 | 0 | 0 | 8 | 8 | 0 | 1 | 0 | " | 1 | 11.3 | 11.3 | 12/31/81 |
| OFFICE MANAGEMENT 26 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 2.1 | 2.1 | 12/31/83 |
| MANUFACT. MANAGEMENT 27 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 1.3 | 1.3 | 12/31/85 |
| MANUFACT. SUPERVISOR 28 | 4 | 0 | 0 | 4 | 2 | 2 | 0 | 0 | " | 0 | 5.0 | 5.0 | 12/31/84 |
| MANUFACT. SUPV. TR. 29 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 1.8 | 1.8 | 12/31/82 |

(MINORITY) (XXXXXX) GOALS FOR ALL UNDERUTILIZED MAJOR JOB GROUPS: 2.12

FACILITY: LADISH CO. – CUDAHY    DATE: 7/1/80

| Underutilized Major Job Groups | Anticipated Openings | | | | To Be Filled By | | Annual Goals | | | | Ultimate Goals | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Attrition | Expansion | Contraction | Total | New Hires | Promotions and/or Transfers | Hires | Promotions | Timetable | Net Gain | Percentage Goal | Annual Rate of Placement | Timetable |
| EDP PROFESS. 30 | 2 | 0 | 0 | 2 | 2 | 0 | 1 | 0 | " | 0 | 5.4 | 5.4 | 12/31/81 |
| SALES–EXTERNAL 32 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 1.4 | 1.4 | 12/31/85 |
| SALES INTERNAL 33 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 1.4 | 1.4 | 12/31/82 |
| SALES–MANAGEMENT 34 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | " | 0 | 2.1 | 2.1 | 12/31/85 |
| TECHNICIANS SENIOR LEV. 37 | 2 | 0 | 0 | 2 | 2 | 0 | 0 | 0 | " | 0 | 3.0 | 3.0 | 12/31/84 |

## APPENDIX "B"

### NOTICE OF HEARING TO CONSIDER AND APPROVE PROPOSED CONSENT DECREE

### PLEASE READ CAREFULLY. IT MAY AFFECT YOUR RIGHTS.

### NOTICE IS HEREBY GIVEN THAT:

1. A case entitled *William Wattleton, et al. v. Ladish Co., et al.*, Civil Action No. 75–C–746, was filed in the United States District Court in Milwaukee, Wisconsin on December 30, 1975, by certain black present and former employees of the Cudahy, Wisconsin facilities of Ladish Co. (hereafter "Ladish" or the "Company") who claimed to have been discriminated against by Ladish and the labor unions which represent employees at Ladish with respect to employment opportunities because of their race (black). The defendants have denied and continue to deny these allegations.

2. This action has previously been certified as a class action and notice has been provided to the class. For the purposes of the Consent Decree now proposed, the class represented by plaintiffs has been defined as follows:

a. All blacks who were hired by Ladish Co. at Ladish's Cudahy, Wisconsin facilities prior to January 22, 1968 for jobs within the jurisdiction of the International Association of Machinists and Aerospace Workers, Local 1862; and

b. who were employed by Ladish in bargaining unit jobs as of December 30, 1969.

3. Certain parties have negotiated a settlement of the action that they believe is reasonable and fair and have prepared a proposed Consent Decree that must be approved by the Court before it is placed into effect.

4. A copy of the proposed Consent Decree is being mailed to you together with this notice. Copies of this proposed Consent Decree are also on file in the office of the Clerk of Court, United States District Court, Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, telephone (414) 291–3372.

5. The proposed Consent Decree, if approved by the Court, will include all class members and will be binding on the rights of all class members. PLEASE NOTE, as the Consent Decree makes clear, not all union defendants have agreed to the Decree. Therefore, with regard to the seniority relief described in Paragraph IV of the Decree, full implementation of its provisions may require further action to bind the non-settling defendants. However, whether the non-settling union defendants agree to the Decree or not, all other aspects of it including the monetary relief will be implemented if approved by the Court.

6. If you wish to object to the terms of the proposed Consent Decree, you should

mail a *written* objection to the Clerk, United States District Court, Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202, on or before December 15, 1980. Your notice of objection should specify your name, address, phone number and period of employment with the defendant Company and should refer to this case. *Wattleton, et al. v. Ladish Co., et al.*, No. 75–C–746. You should also state the reason for your objection.

7. The Court will conduct a hearing to approve or take objections to the proposed Consent Decree on December 22, 1980, at 9:30 A.M. in Courtroom 425, Federal Building, 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202. All class members have the right to appear at this hearing. Any person objecting to the proposed settlement should appear at said hearing.

8. The plaintiffs' attorneys in this action are Mr. Percy L. Julian, Jr., whose address and phone number are 330 East Wilson Street, Post Office Box 132, Madison, Wisconsin 53701 (Phone: 608/255–6400) and Mr. Jonathan Wallas, whose address and phone number are 951 South Independence Boulevard, Suite 730, Charlotte, North Carolina 28202 (Phone: 704/375–8461).

9. This notice is provided pursuant to order of the Court. It is not an expression of opinion as to any of the claims or defenses asserted in the case. Its purpose is to advise you of the proposed Consent Decree so that you can decide what action to take.

This 7th day of November, 1980.